United States Fidelity & Guaranty Co. *v.* Young.

[90 South. 448. No. 22295.]

1. Clerks of Courts. *Statutes do not require circuit clerk to receive and receipt for and disburse costs voluntarily paid by litigants.*

There is no statute which either expressly or by implication imposes the duty on a circuit clerk to receive and receipt for and disburse to those entitled thereto, costs voluntarily paid to him by litigants against whom the same have been adjudged by the court of which he is clerk.

2. Clerks of Courts. *Circuit court clerk's surety not liable to sheriff on bond for costs voluntarily paid by litigants.*

In a suit by a sheriff against the surety on the official bond of a circuit clerk, whose bond is conditioned that "he shall faithfully perform the duties of his said office during his continuance therein," to recover court costs belonging to the plaintiff, and received and receipted for by such clerk from litigants in the court of which he is clerk, voluntarily paid to him by such litigants, the plaintiff is not entitled to recover against such surety because in so receiving and receipting for such costs such clerk does not act in his official capacity, but only as the agent of the parties paying the same; therefore, there is no liability to the plaintiff because no breach of the condition of the clerk's bond.

Appeal from chancery court of Lauderdale county.

Hon. G. C. Tann, Chancellor.

Bill by J. P. Young, former sheriff of Lauderdale county, against W. C. Fleming, former clerk of said county, and the United States Fidelity & Guaranty Company, surety on the clerk's official bond. The guaranty company's demurrer to the last amended bill was overruled, and it appeals. Reversed, and judgment here for appellant.

*Wm. M. Hall* and *Jacobson & Brooks,* for appellant.

If it were not the duty of the clerk to collect the fees or receive the fees due J. P. Young, sheriff, then the appellant here, the United States Fidelity & Guaranty Company, is not liable as surety on the official bond of the said clerk, because there was no breach of the bond. This seems to be agreed upon as the fighting ground in this cause by the appellee, and we concede that it is the only question in the case, and that the case must stand or fall upon this issue in law.

We also, wish to state at the outset that we do not contend that the doctrine of *strictissimi juris* applies in the construction of the liability on the bond made by a "bond company," who becomes surety on a bond for a considera·tion, as it does when an individual becomes a surety on a bond for mere accommodation, nor have we used this phrase or these words, nor contended in our brief for that doctrine; but we did say that so far as the bond imposes a liability, it is construed strictly, by which we mean that the liability of sureties on such bonds is not to be extended beyond the terms of their engagement, nor what is under contemplation at the time the bond is made. The very authority that the appellee cites as laid down in 14 R. C. L., at page 47, which is taken from the subject of "Indemnity" begins the next sentence after the one quoted by the appellee, as follows: "However, the liability of an indemnitor is never endangered by mere construction to include a term specially excluded." This sentence, which should follow the quotation of the appellee, was omitted in his quotation, and which we think is pertinent, and should have followed his quotation. In other words, we contend that the liability of the surety is to indemnify to the extent within the terms of the bond and the contemplation of the law which required it to be given, and that it should be strictly construed not to include matters and things beyond this.

Counsel for appellee states that he has no quarrel to make with the law as announced in the case of *Matthews*

v. *Montgomery*, reported in 25 Miss., at page 150, and which was cited in our original brief, but he tries to nullify that decision as affecting the present case, by stating that the condition of the bond given by Fleming in the present case is different from the conditions of the bond given by the clerk in the Matthews case.

We have made a careful and close investigation, and we do not find that the law in the Matthews case has ever been changed, and is the law of the case at bar today. Taking the conditions of the bond of the clerk of the circuit court out of which the Matthews case arose, and we find as quoted by the appellee on page 4 of his brief, that Hutchinson's Mississippi Code, chapter 27, page 432, is as follows: "Conditioned for the faithful performance of the duties of his office, and that he seasonably record the judgments, decrees, and orders of said court and deliver over to his successors in office, all records, minutes, books, papers, presses, and whatever belongs to said office."

And the condition of the bond of the clerk of the circuit court in this state since 1906, which is set out in section 3463 of Mississippi Code 1906 (section 2891, Hemingway's Code 1917), is as follows: "Therefore, if he shall faithfully perform all the duties of said office during his continuance therein, then the above obligation to be void."

So it will be seen that at the time the Matthews case was decided that the conditions of the bond were exactly the same as it is now.

Referring to page 474 of Hutchinson's Code, and particularly, to sections 2, 3, 4 and 5 thereof, we find that the clerk in that day was required to do the same thing as the clerk is required to do in this day as to fee bills. That is to tax the cost, and to make up and file the bill of cost in his office as a public record when the cause has been determined, which is prescribed by section 969, of Mississippi Code of 1906 (Section 674, Hemingway's Code 1917.)

In fact, the duties of the clerk, so far the collection of cost of other officers, were the same at the time the Matthews case was decided as they are today. As cited in our

original brief, the clerk is not the collecting officer for any other officers of the court, and it is no part of his duties to collect or receive fees due other officers of the court. It is the sheriff who collects under execution, and who is required to collect the fees of other officers. We contend that the law is settled in this, and that it being no part of his official duties to collect fees due the sheriff, and that question alone being the gravaman of this bill of complaint against the appellant here, that if this court is committed to that view, then the demurrer should have been sustained. There is not a word in any of the books or statutes that defines among the duties of a circuit clerk that of collecting fees due the sheriff.

The case cited by the appellee, to-wit: *Lewis* v. *State,* reported in 4th Southern, at page 429, is not in point, nor in the appellee's favor, because in that case it was shown that the clerk issued, at various times, divers and sundry false and fraudulent witness certificates, and put them in circulation, and that the same were accepted as genuine and paid by the county. It is undoubtedly the duty of the clerk to issue witness certificates. No one else could issue them, and it is the law today in this state that the clerk should issue witness certificate. No one else could issue witness certificates, and when he falsely and fraudulently did that, he did not faithfully perform his duties to the county; his principal, and his acts were the false and fraudulent acts of the county's agent, and undoubtedly his bond as clerk covers this liability. The court in that decision held that it was his duty to do those things, and held the bondsman liable, because he acted wrongfully, or violated his duty in defrauding the county as he did, and, thus breached his bond. This case is not applicable as. an authority in the present case, for the reason that in the Lewis case it is clear that the clerk breached his bond in failing to perform a duty of his office, while in the present case the clerk is charged with breaching a duty, which is not a duty of his office. In the Lewis case the court referred to the case of *Furlong* v. *State,* 58 Miss. 717,

and that case held plainly that no action can be brought
on an official bond for any misfeasance of the officer which
is not included within the terms of the condition of the
bond, or in the contemplation of the law requiring the
bond, that is the very contention of the appellant in this
case that the bill of complaint herein cannot be maintained
against the appellant, because it attempts to hold the ap-
pellant liable on an alleged misfeasance of the officer, which
is not included within the terms of the condition of the
bond, or in the contemplation of the law requiring the bond.
Certainly, the surety on the official bond has a right to
reasonably expect that when he becomes a surety on a
bond, that he will not be held liable for any misfeasance
of the officer not contemplated by law, nor included within
the terms of the condition of the bond; and, thus, it is, that
the appellant in this case has a right to take into considera-
tion the established law of the land as laid down by the su-
preme court in what is included in the terms of the condi-
tion of the bond in which it entered into.    Again, we es-
pecially call the court's attention to the case of *United
States Fidelity & Guaranty Co.* v. *Yazoo City,* 116 Miss.
358, one authority cited by the court therein as being
conclusively in favor of appellant here.

We respectfully submit, as is more fully shown in our
original brief, that the charge against the clerk, Fleming,
in receiving fees belonging to Sheriff Young, which he
did not turn over to Sheriff Young, that no breach of the
condition of the bond was made, and that he is only charged
with misfeasance, which were no part of his duties as clerk
of the circuit court of Lauderdale county, Mississippi. And
that the action of the learned chancellor in the court be-
low in overruling the demurrer of the appellant be reversed,
and the bill of complaint be dismissed as to this appellant.

*H. T. Odom,* for appellee.

Counsel for appellant rest their hopes of a reversal al-
most entirely on a decision handed down by Justice Fisher

in the case of *Matthews* v. *Montgomery,* reported in 25 Miss. at page 150. I have no quarrel to make with the law as announced in that case. Under the practice and statutes existing at the time, that announcement was clearly the law. But it is manifest that with the development of the times that the duties of the clerk have increased materially since this case was decided. I shall endeavor to show that after an elapse of seventy years that the practice now is wholly different from then and that numerous laws have been placed on our statute books relative to official bonds and the duties of circuit clerks which render the Matthews case clearly inapplicable to the case at bar.

From an examination of the *Matthews case, supra,* it appears that the facts are not set out in the opinion, and neither is the condition of the bond. We have no way of informing ourselves as to the allegations of the bill in this case, but we can ascertain the conditions of the official bond, and the statutory duties of the clerk at that time. I have made a careful research of the statutes in force when the Matthews case was decided in 1852, and find that the official bond required at that time is materially different from the requirements when appellant, Fidelity Company, became surety on the bond in the case at bar. I further find that we have now and existing while appellant's bond herein was in force, numbers of laws on our statute books relative to the duties of the circuit clerk that did not exist when the opinion in the Matthews case was written. Inasmuch as the conditions of the bond and the duties of the clerk are of vital importance in determining the liability of the surety in a case of this kind, and since we must necessarily look to these elements to ascertain whether or not the case at bar is governed by the Matthews case, an analysis of the statute laws on these subjects at that time and now is essential. The importance of the court's opinion could only be determined in this way since it is silent on this point.

With that end in view and with the allegations of appellee's bill in mind, I shall make a comparison between

the official bonds required prior to 1852 and those when the bond in the case at bar was executed; and also briefly digest the laws relating to the duties of the circuit clerk then and now. Turning to Hutchinson's Mississippi Code for authority we find that the condition of the official bond of the circuit clerk prior to the decision in the Matthews case was in the following terms: "conditioned for the faithful performance of the duties of his office, and that he seasonably record the judgments, decrees and orders of the court, and deliver over to his successor in office, all records, minutes, books, papers, presses, and whatever belongs to said office:" Hutchinson's Mississippi Code, chapter 27, section 10, page 432.

The statutory requirement as to the conditions of official bonds in this state since 1906, and sometimes prior thereto is set out in section 3463 of the Mississippi Code of 1906, as follows: "Therefore, if he shall faithfully perform all the duties of said office during his continuance therein, then the above obligation to be void."

A comprehensive study of the statutory law in force prior to 1852 discloses no other duties of the circuit clerk except those enumerated in the condition of the bond set out above which we must assume was complied with in the Matthews case. In other words only a breach of the duties specified in the bond would render the surety liable, and since the duties were set out in the condition of the bond they could neither be taken from or added to by the court, but it was bound by the bond. In other words, it was expressly stated in the bond what must be done to constitute a faithful performance of his official duties. Neither were there any statutes in existence at that time from which it could have been implied that it was the duty of the circuit clerk to collect fees belonging to the sheriff or any costs at all. And it will be noted that in the case at bar the condition of the bond is simply that the clerk faithfully perform the duties of said office, without enumerating any duties whatever.

It is conceded that our statutes now, do not in so many words, require the clerk to collect the sheriff's fees or any other cost, but I submit that it is a duty plainly and clearly implied and contemplated from existing statutes. In support of my contention I respectfully direct the court's attention to the following provisions of the Mississippi Code of 1906: "The clerk and not the sheriff has the right to make a motion for security for costs." Section 940.

The clerk may refuse to file a declaration where the party is insolvent or a non-resident unless the party gives security, or pay in advance fees for filing the declaration, docketing the case, issuing, executing and returning the process. Section 939. In cases of interpleaders the amount paid into court is in the hands of the clerk and said amount is liable for costs. Section 772.

Likewise where the party defendant tenders into court with his plea a sum of money in satisfaction of the case, such sum of money must be accompanied with all accrued costs. Section 771 and annotations. If a deposit for costs is made with the clerk, and costs are ruled against the party making the deposit, then the clerk must pay all costs out of the deposit. Section 943.

Under operation of the foregoing statutes, all costs are paid to the clerk in such cases, including the fees of the sheriff. Such costs are of necessity on deposit with the clerk as custodian of the court. It cannot be disputed that it is the official duty of the clerk to distribute same to the parties who are entitled to same when the cause is determined. So with these statutes before us as a guide it is plain that they make it the clerk's official duty to collect and receive full costs in such cases. In the successful party's judgment he recovers the costs also, same being a part and parcel of the judgment. Section 952.

It is the duty of the clerk to tax the costs and to make out and file the bill of costs in his office as a public record when a cause has been determined. Section 969.

The costs are not payable until the party chargeable with same is presented with a cost bill made out as required by

the preceding section. Section 970. Who can present this cost bill? Only the clerk, for it is in his possession, being a record of his office. And if the clerk presents the bill, certainly it is contemplated that the costs will be paid to the clerk and not some other person. If A presents me a bill, I do not go and pay B.

The clerk has the authority to satisfy a judgment. Section 918. Judgments could not be satisfied until all costs have been paid, because costs are a part of the judgment. If the party owing the costs fails to pay same in due time then it becomes the duty of the clerk to issue execution and place same in the hands of the sheriff. Section 973. It will be observed that this is the first time that the sheriff has had any opportunity whatever to collect the costs or any part thereof. In fact, he has had no authority to do so. He has had no cost bill in his possession, and his hands have been tied awaiting the pleasure of the clerk to issue the authority, an execution without which the sheriff could do nothing.

It will be noted that it is not in cases where execution has issued that appellee is complaining in his bill, but of cases wherein costs were collected by surety's principal before execution issued, up to which time the sheriff never has the opportunity or authority to demand or collect the costs, this power being vested alone with the clerk until execution issues.

Clerks of all courts, unless otherwise directed, shall within twenty days after adjournment of the court for the term, issue executions on all judgments rendered therein. Section 3958. The reason for allowing time is to give the party an opportunity to pay the cost into court (to the clerk) before issuing execution to save further costs.

Again it is contemplated that certain moneys will pass through the clerk's hands by law or order of the court, for which he will be liable to someone. Sections 690 and 2173. This being true, then what moneys could come into his hands wherein costs would not be attached, in which other officers than the clerk would have earned fees? Certainly

he does not have to execute a bond for his own fees, such as notary fees, fees for issuing marriage license, etc.  In all cases where moneys come into the clerk's hands it is always accompanied by costs including fees of the sheriff and other officers.  All judgments given are by order of the court, and embrace the costs and could not be satisfied in full until all costs have been paid.  And further all judgments, by order of the court contain a provision that if not paid then execution may issue.  Thus from the above statutes relative to the duties of the clerk it is obvious that it was the official duty of the said W. C. Fleming as circuit clerk to demand and collect all costs including sheriff's fees up to the time of issuing execution.

From a careful research of the statutory law in force prior to 1852, I found none of the statutes reviewed above and none similar to them.  If it be conceded that there were no such statutes in effect when the Matthews case was decided, then it follows that our court is not bound by a decision announced under a different state of facts, and which was written when no such statutes existed, and when the conditions of the bond were so materially different as shown above.  It seems clear that from these reasons alone that the Matthews case cannot apply to the case at bar, and that the learned chancellor's holding that the appellee's second amended bill of complaint states a cause of action as to the appellant surety, must be affirmed.

While it seems clear to my mind from the foregoing statutes that the duty of the clerk to collect all costs is manifest, and that they should settle the proposition under discussion, I also contend that the said W. C. Fleming in collecting costs as alleged in appellee's bill, was acting within the scope of his official duties and by virtue and color of his office as circuit clerk.  One allegation in appellee's bill is: "That in a number of cases the said W. C. Fleming as clerk received money, or certified checks on deposit for costs; that these causes have been determined, and complainant's fees in such cases retained by the said W. C. Fleming."  That the surety is liable on official bonds in

such cases for costs due other officers is absolutely fixed in this state by statute.   Miss. Code 1906, section 944.

Again as above stated, it cannot be disputed that the clerk officially collected all costs in cases of interpleaders and tenders.   This is a duty required of him.   Sections 771 and 772, Miss. Code 1906.   It follows that if the clerk by virtue of his office must collect full costs in some cases, then whenever costs are collected by him it must be presumed that he is acting by virtue of his office.   *Lewis* v. *State,* reported in 4 So. at page 429, citing Brandt, Sur., par. 452; Murfee, Off. Bonds, par. 211; *People* v. *Treadway,* 17 Mich. 480; *Armington* v. *State,* 45 Ind. 10; *Mahaska Co.* v. *Ruan,* 45 Iowa, 328; *Kane* v. *Railroad,* 5 Neb. 105; *Foc.* v. *Meachan,* 6 Neb. 530.

In support of the above theory we find the following doctrine announced in 11 C. J., paragraph 69B. at page 886: "The official duties of a clerk of court embrace every act which the law requires of him to perform by virtue of his office; not only those which the statutes expressly impose on him, but also such duties as, by the long established practice of the court, he has been required to perform; and likewise his authority to perform a certain act is sometimes recognized on the ground of long usage."   The same law is announced in 22 R. C. L., at page 461, section 123.

Conclusion.   Therefore, since it appears from obvious and manifest reasons, as set out in this brief, that the Matthews case is not as applicable to the case at bar, and further that under existing statutes that it is clearly implied that it is the official duty of the circuit clerk to collect all costs in cases determined in his court, and further that in certain cases that he is expressly required to do so, and further since it is the long established practice, custom and usage of clerks to collect all costs, for this is admitted by appellant's demurrer, I respectfully submit that the learned chancellor was correct in overruling appellant's demurrer herein and that his holding should be affirmed and the case ordered tried on its merits.

Anderson, J., delivered the opinion of the court.

This is a bill by the appellee, J. P. Young, former sheriff of Lauderdale county, against W. C. Fleming, former circuit clerk of said county, and the United States Fidelity & Guaranty Company, the appellant, the surety on the official bond of said clerk, to recover one thousand, one hundred forty-two dollars and seventy-five cents fees alleged by the appellee to have been collected by said clerk by virtue of his office, during his term of office, belonging to the appellee, which the said clerk had failed and refused to pay over to appellee, thereby breaching the condition of his official bond. There was an original and two amended bills filed. Appellant's demurrer to the last-amended bill was overruled, from which decree appellant was allowed an appeal to this court to settle the principles of the cause.

The gravamen of the bill is that for the term of four year, 1916 to 1919, inclusive, the appellee was sheriff of Lauderdale county and W. C. Fleming was circuit clerk; that during said period (taking the averments of the bill most strongly against the pleader, as should be done), the circuit clerk collected from various litigants against whom court costs had been adjudged by the circuit court of said county various amounts of such costs belonging to appellee, which said circuit clerk had failed and refused to pay over to appellee, on demand; that said costs so collected were costs voluntarily paid by the parties litigant against whom it had been adjudged; that under the law it was the duty of such circuit clerk to receive payment of costs under such conditions; that he received the same by virtue of his office; and, in addition, that by long custom and practice he had been in the habit of so receiving and receipting for court costs, and therefore they had been received by color of his office. The condition of the official bond of the said clerk is in the language of the statute, which is that "he shall faithfully perform the duties of his said office during his continuance therein."

Oct., 1921]    U. S. Fid. & Guar. Co. *v.* Young.        737

127 Miss.]                    Opinion of the court.

It is contended on behalf of appellant that the case of
*Matthews* v. *Montgomery,* 25 Miss. 150, is decisive of the
question here involved in its favor, and that under that
authority appellant is entitled to a reversal of the decree
of the court below and a dismissal of appellee's bill.  *Matthews* v. *Montgomery, supra,* like the present case, was a
suit by Flournoy, former sheriff of Madison county, against
Montgomery and the sureties on his official bond as circuit clerk of said county.  The breach assigned was that
Montgomery, as clerk, collected fees belonging to said
Flournoy, as sheriff, and had failed to pay over the same to
him on demand.  The court said:

"The only question made is, whether the action can be
sustained on the bond.  The bond is conditioned that the
clerk shall faithfully perform those duties required of him
by law.  It is no part of his duties to collect or receive the
fees due other officers of the court.  He is not, in such case,
the officer of the law to receive the fees or the agent of the
officer for that purpose, but only the agent of the party
paying."

It is argued on behalf of appellee that the Matthews Case
is not decisive of the question here involved, because of the
difference in the duties of the circuit clerk as prescribed
by law at that time and at the present time.  We have examined the statutes in force when that decision was made,
as they appear in Hutchinson's Code, governing the duties
of the circuit clerks, for the purpose of comparison with
the statutes now in force with reference to their duties, and
we are unable to find any substantial difference.  The condition of the clerk's bond then was in this language:

"Conditioned for the faithful performance of the duties
of his office, and that he seasonably record the judgments,
decrees, and orders of said court, and deliver over to his
successor in office, all records, minutes, books, papers,
presses, and whatever belongs to said office."  Hutchinson's
Code, chapter 27, section 10, p. 432.

This, in effect, is the same condition as that laid down by
law at present.  It was distinctly held in the Matthews

127 Miss.—47

Case that a circuit clerk receiving payment of court costs due the sheriff, under the circumstances of the present case, acted alone as the agent of the party paying.

It is conceded on behalf of appellee that there was no statute during Fleming's term of office which expressly made it the duty of circuit clerks to receive and receipt for, and disburse to those entitled thereto, costs voluntarily paid to them by litigants in their courts against whom the same had been adjudged. But it is argued that the allegation in the bill that by long custom and practice the circuit clerks had been performing such services is sufficient to have made it a part of their official duties, and to sustain this position counsel for appellee cites and relies on 11 C. J., section 69, p. 886, which states that clerks of courts are not only required to perform the duties expressly imposed on them by law, but also such as by long-established practice they are required by the court to perform. Were this contention sound, there is no allegation in the bill in this case that the long-established custom averred in the bill of the circuit clerks collecting costs voluntarily paid to them was the result of a requirement by the courts of which they were clerks. In the same paragraph of Corpus Juris referred to by counsel it is further stated that a statute conferring powers on a clerk is to be strictly construed and will not be extended beyond its terms.

We therefore conclude that there is no liability of the surety on the bond in question.

Reversed and judgment here for appellant.

*Reversed.*